ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| CDT AUTO COLLISION, INC.<br><br>Parte Recurrente<br><br>V.<br><br><br>DEPARTAMENTO DE LA VIVIENDA<br><br>Parte Recurrida | TA2025RA00208 | Revisión Judicial procedente del Departamento de la Vivienda, Programa CDBG-DR-MIT<br><br>Caso Número: AR2200353<br><br>Sobre: Departamento de la Vivienda (Dv)(Vivienda) |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Salgado Schwarz y la Juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 16 de diciembre de 2025.

Comparece CDT Auto Collision, Inc. ("Recurrente" o "CDT Auto Collision") y solicita que revoquemos la Resolución emitida el 29 de julio de 2025 por el Departamento de la Vivienda ("Recurrida" o "Vivienda") en la que desestimó el recurso con perjuicio.

Por los fundamentos que exponemos a continuación, **_confirmamos_** la determinación emitida por la Recurrida.

-I-

A continuación, exponemos los hechos pertinentes a la controversia de epígrafe.

Según surge de la Resolución impugnada, el 7 de noviembre de 2022, CDT Auto Collision presentó una Solicitud de Revisión Administrativa ante la División Legal del Programa de Subvención en Bloque para Desarrollo Comunitario – Recuperación ante Desastres ("CDBG-DR/MIT") del Departamento de la Vivienda. En esa

ocasión, alegó no estar de acuerdo con la determinación de inelegibilidad emitida por el Programa de Financiamiento para Pequeñas Empresas ("SBF") el 12 de octubre de 2022.[1] Según surge de la Resolución impugnada, la determinación de inelegibilidad se basó en que el Recurrente no presentó evidencia para sustentar los daños sufridos como consecuencia de los huracanes Irma y María ("huracanes"). Además, SBF señaló que el Recurrente no evidenció que el negocio se encontraba abierto y operando al momento del paso de los huracanes, conforme lo establece la Sección 8.1 de las Guías del Programa SBF, según enmendadas[2]. Inconforme con tal determinación, el 22 de octubre de 2022, CDT Auto Collision presentó una Solicitud de Reconsideración al Programa SBF[3]. Sin embargo, el 25 de octubre de 2022, SBF notificó la denegatoria de la reconsideración[4]. Así las cosas, el 14 de diciembre de 2022, la Recurrida presentó una Moción de Desestimación. A tales efectos, se le concedió un término a la Recurrente para presentar su posición, sin embargo, no lo hizo.

Posteriormente, el 19 de diciembre de 2023, el Lcdo. Gabriel Peñagaricano asumió la representación legal de la parte Recurrente y expresó que CDT Auto Collision era elegible para recibir los fondos solicitados y que no existía fundamento legal para denegar la asistencia[5]. Como parte de su argumentación alegó que la empresa se encontraba abierta y operando

---

[1] Véase Entrada #2 del expediente de Primera Instancia en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Íd.*
[3] *Íd.*
[4] *Íd.*
[5] *Íd.*

al momento del paso de los huracanes. Añadió que, en el año 2016 se cambió el DBA de 360 Green, Inc., del nombre Auto Transformers a CDT Auto Collision, por lo que, al momento de los huracanes, el negocio operaba bajo dicho nombre[6].

Luego de varios trámites procesales, la Oficial Examinadora declaró "No Ha Lugar" la moción de desestimación y señaló una vista adjudicativa para el 20 de mayo de 2024. Por solicitud de la parte recurrente, se transfirió la vista para el 12 de agosto de 2024[7]. En esa ocasión, la Oficial Examinadora hizo las siguientes determinaciones de hechos:

1. El 7 de noviembre de 2022, la Parte Promovente presentó, mediante correo electrónico, a la División Legal del Programa CDBG-DR/MIT de Vivienda, una Solicitud de Revisión Administrativa relacionada con la Subvención de Recuperación del Programa SBF. En dicha solicitud, la Parte Promovente manifestó su inconformidad con la Determinación de Inelegibilidad emitida por el Programa el 12 de octubre de 2022.

2. La referida Determinación de Inelegibilidad notificó a la Parte Promovente que no evidenció haber sufrido daños como consecuencia de los Huracanes, ya que no demostró que se encontraba abierta y operando al momento del paso de los Huracanes.

3. El 22 de octubre de 2022, la Parte Promovente presentó una Solicitud de Reconsideración respecto a dicha determinación.

4. El 25 de octubre de 2022, el Programa SBF notificó la denegatoria de la reconsideración, reiterando que la Parte Promovente no evidenció que la empresa estuviera abierta y operando al momento de los Huracanes.

5. CDT Auto Collision, Inc. fue incorporada en el año 2016 en el Departamento de Estado.

---

[6] *Íd.*
[7] *Íd.*

6. CDT Auto Collision, Inc. comenzó operaciones en el 2018.

7. CDT Auto Collision, Inc. no es elegible para la subvención del Programa SBF por incumplimiento con la Sección 8.1 de las Guías del Programa.

8. La Declaración sobre Volumen de Negocios de CDT Auto Collision Inc. correspondiente al año 2017 reflejó que tenía cero (0) empleados y que la nómina de empleados era cero (0).

9. CDT Auto Collision Inc. obtuvo el permiso de uso el 8 de febrero de 2018.

10. Con relación a las pérdidas físicas, la Parte Promovente no proveyó los documentos requeridos para validar la pérdida física, conforme a lo establecido en las Guías del Programa SBF.

11. Para los años 2016 y 2017, la Parte Promovente no reflejó actividad económica, según surge de las planillas sometidas.

12. La Parte Promovente reflejó ganancias para el año 2018 por la cantidad de $327,320.00.

13. La Parte Promovente no presentó estimados de daños ni de reparaciones, conforme requieren las Guías del Programa SBF.

A tenor con lo anterior, el 29 de julio de 2025[8], Vivienda emitió una Resolución desestimando la reclamación con perjuicio.

Inconforme con la determinación, el 29 de agosto de 2025, el Recurrente acudió ante nos mediante recurso de revisión judicial e hizo los siguientes señalamientos de error:

**PRIMER ERROR: EL DEPARTAMENTO DE VIVIENDA ERRÓ AL DESESTIMAR EL RECURSO DE REVISIÓN ADMINISTRATIVA, Y NEGAR LA ASISTENCIA ECONÓMICA SOLICITADA, TODA VEZ QUE EL NEGOCIO QUE OPERA PRIMERO BAJO 360 GREEN INC. Y LUEGO BAJO CDT AUTO COLLISION SÍ CUMPLE CON TODOS LOS REQUISITOS DE ELIGIBILIDAD [SIC].**

---

[8] Notificada el 30 de julio de 2025.

**SEGUNDO ERROR: EL DEPARTAMENTO DE VIVIENDA ERRÓ AL DESESTIMAR EL RECURSO DE REVISIÓN ADMINISTRATIVA, Y NEGAR LA ASISTENCIA ECONÓMICA SOLICITADA, TODA VEZ QUE OBVIÓ LA PRUEBA ORAL QUE DESFILÓ EN LA VISTA ADMINISTRATIVA Y DOCUMENTOS EN EL EXPEDIENTE ADMINISTRATIVO QUE ESTABLECIERON QUE EL NEGOCIO QUE OPERA PRIMERO BAJO 360 GREEN INC. Y LUEGO BAJO CDT AUTO COLLISION SÍ CUMPLE CON TODOS LOS REQUISITOS DE ELIGIBILIDAD [SIC].**

Por su parte, el 8 de diciembre de 2025, Vivienda presentó su *Alegato en Oposición a Recurso de Revisión Judicial*[9]. En síntesis, la Recurrida señaló que la determinación impugnada estuvo basada en evidencia sustancial que surge del expediente administrativo, por lo que corresponde otorgarle deferencia al dictamen emitido.

-II-

**A. Deferencia administrativa**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*[10] ("LPAUG") autoriza la revisión judicial de las decisiones de las agencias administrativas. Es un principio establecido que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, debido a que estas cuentan con vasta experiencia y pericia para atender los asuntos que le han sido delegados por la Asamblea Legislativa.[11] Por lo tanto, las determinaciones de las agencias suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para

---

[9] Véase Entrada #11 del expediente de Apelaciones en SUMAC.
[10] Ley Núm. 38 de 30 de junio de 2017, según enmendada.
[11] *Hernández Feliciano v. Mun. de Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).

derrotarlas.[12] Sin embargo, dicha norma no es absoluta. A tales efectos, nuestro más alto foro ha enfatizado que no podemos imprimirle un sello de corrección a una determinación, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. Nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta [sic] cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.[13]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad.[14] Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción.[15] La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones

---

[12] *Rolón Martínez v. Supte. Policía, supra; Batista, Nobbe* v. *Jta. Directores*, 185 DPR 206, 215 (2012).
[13] *Super Asphalt v. AFI y otro, supra*, pág. 819.
[14] *OEG v. Martínez Giraud, supra; Super Asphalt v. AFI y otro, supra*, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde, supra*, pág. 127.
[15] *OEG v. Martínez Giraud, supra*.

de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas.[16] Nuestro máximo foro ha expresado que esta intervención "*debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley.*"[17] Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[18]

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad.[19] No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra.[20] Ahora bien, nuestro más alto foro ha establecido que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales.[21]

Finalmente, el Tribunal Supremo ha expresado que, conforme a lo anterior, el criterio administrativo no

---

[16] *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627; *Batista, Nobbe v. Jta. Directores*, *supra*, pág. 217.
[17] *Rolón Martínez v. Supte. Policía*, *supra*, pág. 36.
[18] *Íd.*; *OEG v. Martínez Giraud*, *supra*; *Super Asphalt v. AFI y otro*, *supra*.
[19] *Véase Sección 4.5 de la LPAUG, 3 LPRA § 9675*; *Rolón Martínez v. Supte. Policía*, *supra*, pág. 36; *Torres Rivera v. Policía de PR*, *supra*, pág. 627.
[20] *Torres Rivera v. Policía de PR, supra,* pág. 627.
[21] *Íd.*, págs. 627-628; *OEG v. Martínez Giraud*, *supra*, pág. 90.

podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "*la deferencia judicial al expertise administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia.*"[22]

## B. Guías del Programa de Financiamiento para Pequeñas Empresas

Los daños causados por los huracanes Irma y María en el año 2017 impactaron en gran medida las actividades comerciales en Puerto Rico. Como consecuencia de dichos eventos atmosféricos las pequeñas empresas tuvieron menos acceso al capital necesario[23]. Por tal razón, el Programa SBF ofrece una Subvención de Recuperación cuyo propósito es "*ayudar a las microempresas y las pequeñas empresas a reiniciar sus operaciones comerciales y fomentar el crecimiento de la actividad comercial y económica luego del paso de los Huracanes, mediante el otorgamiento de subvenciones para proveer capital operacional y equipos*"[24].

A fin de ser elegibles, las empresas deben presentar evidencia de las necesidades insatisfechas a causa de los huracanes. A tales efectos, las Guías del Programa SBF incluyen los siguientes requisitos:

- Debe ser una microempresa (cinco (5) empleados a tiempo completo o menos), o una pequeña empresa (setenta y cinco (75) empleados a tiempo completo o menos);

---

[22] *OEG v. Martínez Giraud*, *supra*, pág. 91.
[23] Véase las *Guías del Programa de Financiamiento para Pequeñas Empresas* del 28 de junio de 2023, pág. 6.
[24] *Íd.*, pág. 7.

- La empresa debe estar localizada en Puerto Rico e inscrita para operar en Puerto Rico (el Programa SBF evaluará la elegibilidad de las organizaciones sin fines de lucro sobre la base de ingresos devengados en proporción a sus operaciones);

- La empresa debe haber estado en operación al momento del huracán o los huracanes. Esto significa que debió estar abierta en o antes del 6 de septiembre de 2017 para el huracán Irma; en o antes del 20 de septiembre de 2017 para el huracán María, y:

  - El negocio está abierto o en operaciones al momento de presentar la solicitud de ayuda al Programa SBF; o
  - Los dueños de la empresa tienen previsto reabrir y operar el mismo negocio, lo que significa que van a resumir las mismas operaciones o el mismo negocio; o
  - El propietario abrió un negocio distinto en fecha posterior al 20 de septiembre de 2017, es decir, un nuevo negocio recién registrado bajo el nombre del mismo propietario(s) de una empresa cerrada o fuera de operaciones debido al paso de los huracanes Irma y/o María, pero antes del lanzamiento del Programa SBF el 25 de marzo de 2020.

- La empresa debe presentar evidencia de haber sufrido pérdida financiera o física a causa del impacto directo de los Huracanes. El Programa SBF no requiere que un negocio demuestre pérdidas financieras y físicas para ser elegible. Los daños físicos evaluados por terceros, cálculos de pérdidas financieras, o prueba de un cierre permanente del negocio, puede servir de evidencia de daño físico o pérdida financiera y serán utilizados por el Programa SBF para determinar elegibilidad al Programa;

- Para ser elegible por pérdidas físicas, la empresa debe demostrar que sufrió un mínimo de cinco mil dólares ($5,000) en pérdidas o daños físicos verificadas por terceros.

- Para ser elegible por pérdidas financieras, la empresa debe demostrar al menos una de las siguientes:
  - Pérdida financiera documentada por las planillas corporativas del Estado Libre Asociado de Puerto Rico del año 2017 o 2018 reflejando a su vez una cantidad mayor a $0 para ingreso bruto;
  - Un descenso en sus ingresos brutos anuales de un quince por ciento (15%) entre 2016 a 2017 o de 2017 a 2018 reflejando a su vez una cantidad mayor a $0 para ingreso bruto;
  - Prueba de cierre de un negocio anterior del mismo dueño(s).

- Las empresas actualmente cerradas o fuera de operaciones deben demostrar cómo utilizarán los fondos para lograr la reapertura del negocio;

- No es requisito para las empresas actualmente cerradas o fuera de operaciones reabrir en la misma ubicación en el [sic] que operaban antes de los huracanes.

- La empresa debe tener necesidades insatisfechas elegibles luego del Programa SBF haber contabilizado toda duplicación de beneficios (DOB, por sus siglas en inglés).[25]

-III-

En el presente caso, el Recurrente alega que Vivienda abusó de su discreción al desestimar la revisión administrativa a pesar de que el expediente contiene prueba de que, durante el paso de los huracanes, el negocio en cuestión estaba operando y sufrió pérdidas económicas.

En lo aquí pertinente y, según surge de las Guías del Programa SBF, la parte que interesa beneficiarse de la asistencia económica tiene el deber de demostrar que el negocio se encontraba abierto y operando al momento del paso de los huracanes. Además, debe demostrar que sufrió pérdidas financieras. De los autos del caso no surge tal evidencia. La Recurrente tuvo la oportunidad de presentar prueba en la vista adjudicativa, sin embargo, la prueba presentada no reflejó actividad económica para el año 2017. Incluso, la nómina reflejó que no tuvieron empleados durante ese año. Por el contrario, los documentos presentados muestran que la Recurrente obtuvo el permiso de uso el 8 de febrero de 2018, por lo que, no estaba autorizada a operar antes de esa fecha.

---

[25] *Id.*, págs. 11-13.

De un análisis de los autos del caso surge claramente que el Recurrente no cumplió con los requisitos para recibir la subvención solicitada.

Es norma ampliamente reiterada en nuestro ordenamiento jurídico que las decisiones administrativas suponen una presunción de legalidad y corrección que debemos respetar. Tal y como señalamos en el acápite II de esta Sentencia, dicha deferencia cede si la agencia erró al aplicar la ley, actuó de manera irrazonable o lesionó derechos constitucionales fundamentales. Mientras ello no ocurra, se debe sostener la determinación administrativa.

A tenor con lo anterior, concluimos que el Departamento de la Vivienda actuó de manera razonable y dentro de los parámetros que le concede su ley habilitadora. Su determinación se fundamentó en la evidencia que obra en el expediente administrativo, por lo tanto, no existe razón por la cual debamos intervenir en esta ocasión.

-IV-

Por los fundamentos que anteceden, ***confirmamos*** la determinación recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones